UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA BURRELL et al.,                CASE NO. 16-cv-10568
                                      HON. GEORGE CARAM STEEH
              Plaintiffs,

v.

MGM GRAND CASINO
DETROIT,

              Defendant.
_____/

## ORDER GRANTING DEFENDANT MGM GRAND CASINO DETROIT'S MOTION TO DISMISS (Doc. 19)

Plaintiffs, former cashiers at a sundry shop in the MGM Grand Casino Detroit, who were discharged and prosecuted for embezzlement but were not convicted, brought this federal civil rights suit under 42 U.S.C. § 1983 and § 1985 as well as related state law claims against the moving defendant, MGM Grand Casino Detroit ("MGM"), and five other defendants, all of whom have been dismissed by prior order of the court. Now before the court is MGM's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons discussed below, the motion to dismiss for lack of subject matter jurisdiction was improvidently filed, and the court must limit its analysis here to the question of whether or

- 1 -

not the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).  For the reasons set forth below, plaintiffs have failed to state a federal claim against MGM; thus, the court shall dismiss those claims and shall decline to exercise supplemental jurisdiction over the state law claims.

## I. Factual Background

Because the court is addressing a Rule 12(b)(6) motion, the facts stated here are those alleged in the Complaint.  Plaintiffs Marcia Burrell, Carmen Edwards, Janay Stephens, and Maria Perez were employed as cashiers in MGM's sundry shop, from September, 2007 until they were terminated on or about February 20, 2013 for alleged embezzlement. (Complaint, ¶¶ 14-15, 29).  At the time that they were terminated, plaintiffs were earning close to $20 an hour.  *Id.* at ¶15.  According to the Complaint, when plaintiffs met with the union president after their discharge, their union president informed them that MGM was looking for an excuse to fire them, so that they could be replaced with workers at a lower payrate.  *Id.* at ¶ 31.  In fact, plaintiffs allege that they were replaced with workers earning only $13.50 an hour.  *Id.* at ¶ 30.  Although the Complaint alleges that plaintiffs are all "considered of a racial minority classification," the Complaint does not articulate their particular races, and it is unclear if all the plaintiffs are of the same race.  *Id.* at ¶ 17.  The Complaint also states

that Perez is over 55 years of age; *id.*; however, there is no age discrimination claim, so the inclusion of that allegation is somewhat puzzling.

Plaintiffs were told to report for "training" in late February, 2013. Although it is difficult to discern from the Complaint the exact date of the "training," it appears that it took place on February 21, 2013. *Id.* at ¶ 29. When plaintiffs reported to MGM for the "training," they met with defendants Marston and Hilanka. *Id.* at ¶ 28. It is unclear from the Complaint who Marston is, but it appears likely that she is an MGM employee. The Complaint alleges that Hilanka is a Michigan Gaming Control Board ("MGCB") officer; *id.* at ¶ 28, however, the MGCB, in its motion to dismiss on the basis of sovereign immunity, denied that Hilanka is or ever was its employee. (Doc. 24, PgID 152). When plaintiffs reported for the "training," they were separated, detained, and informed that they were being investigated for wrongdoing. *Id.* at ¶ 26. They were required to have their photographs and fingerprints taken, and were asked to give statements without their labor representative present. *Id.* at ¶ 27.

On February 23, 2013, MGM faxed paperwork to their union stating that they were being terminated as of February 20, 2013 for embezzlement. *Id.* at ¶ 29. On May 2, 2014, plaintiffs were charged with three counts of

embezzlement and/or theft.  *Id.* at ¶ 38.  During their trial, plaintiffs allege that Marston, Hilanka, and another unnamed surveillance officer lied.  *Id.* at ¶ 39.  Plaintiffs were not convicted.  *Id.* at ¶ 42.

On February 16, 2016, plaintiffs filed this suit pleading nine counts as follows: (1) § 1983 claim against "defendants agencies and officers" for alleged Fourth and Fourteenth Amendment violations arising from alleged false arrest, false imprisonment, malicious prosecution, and unreasonable search and seizure; (2) § 1983 claim against "defendants agencies and officers" for alleged violations of their Fifth, Sixth, and Fourteenth Amendment rights to a fair trial; (3) § 1985 claim against "defendants agencies and officers;" (4) § 1983 *Monell* claim against MGCB; (5) false arrest, (6) breach of employment contract against MGM; (7) malicious prosecution; (8) abuse of process; and (9) concert of action.  The Complaint misnumbers both the false arrest claim and the breach of contract claim as Count V.  Plaintiffs sued the following entities and individuals: (1) MGM, (2) MGM Resorts International ("MGM Resorts"), (3) Daniel Hilanka, (4) Eve Marston, (5) unnamed MGM surveillance officer, and (6) MGCB.  All but MGM have been dismissed by prior order of the court: MGM Resorts for lack of service of process and lack of personal

jurisdiction, Hilanka and Marston for failure to prosecute, and MGCB for sovereign immunity.

Now before the court is MGM's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that plaintiffs' claims are time-barred based on the shortened six-month limitations period allegedly agreed to in plaintiffs' employment contracts, and to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.  In their motion to dismiss, MGM addresses the following claims, which it believed to be the only claims pled against it: (1) false arrest, (2) breach of contract, (3) malicious prosecution, (4) abuse of process, and (5) concert of action.

In their response brief, however, plaintiffs asserted that they were pursuing their §§ 1983 and 1985 claims against MGM as well.  That is certainly not clear from the Complaint which in its caption to those counts specifically asserts that those claims pertain to "defendants agencies and officers," while the breach of employment contract claim specifically names MGM as a defendant.  Nevertheless, MGM addressed those claims in its Reply brief, arguing that plaintiffs should not be allowed to amend the Complaint to add those claims as it would be futile as MGM is not a state actor as required under § 1983, and plaintiffs failed to allege class-based

invidious discrimination as required under § 1985. The court allowed plaintiffs to respond to those arguments in a sur-reply brief but plaintiffs have failed to do so, and the time period for doing so has expired.

## II. Analysis

### A.    Statute of Limitations Waivers

The court first considers whether it has subject matter jurisdiction over the instant case. Defendant has moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction on the grounds that plaintiffs' claims are time-barred based on the employment waivers they signed limiting the time period during which they could sue to six months, rather than the longer limitations period which would ordinarily apply to plaintiffs' state and federal claims. Rule 12(b)(1) does not apply, here, however, as the statute of limitations under §§ 1983 and 1985 and plaintiffs' state law claims do not act as a jurisdictional bar, but are an affirmative defense that may be waived. Fed. R. Civ. P. 8(c). The statute of limitations defense is generally a matter for summary judgment, but where the "allegations in the complaint affirmatively show that the claim is time-barred," dismissal under Rule 12(b)(6) may be appropriate. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

Here, defendants do not rely on the allegations of the Complaint to show that the Complaint is time-barred, but have attached statute of limitations waivers that plaintiffs signed as a condition of their employment. The waivers were not attached to the Complaint nor referenced therein; therefore, it would be inappropriate for the court to consider the waivers as part of a Rule 12(b)(6) motion to dismiss.  Accordingly, defendant's motion to dismiss on the basis of the statute of limitations defense must be denied as premature, as it requires a factual analysis to determine reasonableness which is properly a matter for summary judgment, and not a motion to dismiss.

**B.    Standard of Law for Motion to Dismiss Pursuant to Rule 12(b)(6)**

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  "'[N]aked assertions' devoid of 'further factual enhancement'" are insufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

- 7 -

550 U.S. at 557, 570).   To survive a Rule 12(b)(6) motion to dismiss, plaintiffs' pleading for relief must provide "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).   Even though the complaint need not contain "detailed" factual allegations, its "'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.'"   *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

## C.     42 U.S.C. § 1983

In their response to MGM's motion to dismiss, plaintiffs contend that their Complaint alleges a § 1983 claim against MGM, although this is unclear from the face of the Complaint as it does not specifically name MGM in that count but does so in other counts of the Complaint.   Thus, the court treats plaintiffs' response brief discussing that claim as a motion to amend, and addresses whether that claim could survive a motion to dismiss such that amendment should be allowed.   *Forman v. Davis*, 371 U.S. 178, 182 (1962).

- 8 -

In order to state a claim under § 1983, plaintiffs must allege two elements: "(1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).   Here, plaintiffs have failed to allege state action; accordingly, their § 1983 claim cannot survive a motion to dismiss and plaintiffs shall not be permitted to amend the Complaint to add such a federal claim.

Section 1983 does not generally prohibit the conduct of private parties, acting in their individual capacities, but prohibits the government from infringing on an individual's constitutional rights.   *Lindsey v. Detroit Entm't, LLC,* 484 F.3d 824, 827 (6th Cir. 2007). The Supreme Court has established three tests for determining where the conduct of a private actor may be attributed to the state: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship test.   *Id.* at 828. Plaintiffs here have not alleged under which theory they are proceeding, but in a similar case involving claims by individuals against a casino alleging their constitutional rights were violated under color of state law when the casino's security personnel detained them, the Sixth Circuit found that the only relevant test was the public function test.   *Id.*

- 9 -

Finding that defendant's security personnel were not licensed under Michigan law, the Sixth Circuit held that plaintiffs failed to demonstrate that defendant casino engaged in action attributable to the state and thus, affirmed dismissal of their § 1983 claim. *Id.* at 831. So too here. Plaintiffs have not alleged that MGM's security officers were licensed under Michigan law and it is undisputed that they are not. In addition, the Sixth Circuit also has held that pervasive gaming regulation does not transform casinos and their employees into state actors. *Arabo v. Greektown Casino, LLC*, 553 F. App'x 492, 493-94 (6th Cir. 2014) (citing *Lindsey v. Detroit Entm't, LLC,* 484 F.3d 824, 831 n.9 (6th Cir. 2007)). Accordingly, plaintiffs' request to amend their Complaint to add a § 1983 claim against MGM shall be denied as futile as their failure to allege state action is fatal to their claim.

**D.     42 U.S.C. § 1985**[1]

Plaintiffs' Complaint alleges a § 1985 claim against "defendants agencies and officers," but does specifically identify MGM as a defendant for such a claim as the Complaint does in other counts. As such, MGM did not discuss this claim in its motion to dismiss. In their response brief,

---

[1] Although section 1985 has three subsections, plaintiffs have not identified which subsection applies here. Because it is obvious that section 1985(1) and (2) are inapplicable here, the court analyzes the claim under subsection (3).

however, plaintiffs stated that they intended to proceed with such a claim against MGM, and that if their intent to do so was not clear from the face of the Complaint itself, they sought leave to file an amended pleading. Accordingly, the court treats plaintiffs' response brief as a motion to amend. Leave to amend should be denied where the amendment would be futile, in other words, where the amendment could not survive a motion to dismiss.

Section 1985(3) imposes civil liability upon the participants in a conspiracy intended to deprive, "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  To state a claim under § 1985(3), plaintiffs must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (internal quotation marks and citation omitted).  In order to state a conspiracy claim under § 1985(3), plaintiffs must prove a conspiracy of two or more persons.  *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). In addition, to state a claim under § 1985(3), plaintiffs must make specific

factual allegations showing the existence of the conspiracy as well as allegations that the defendants acted with the specific intent to deprive a plaintiff equal protection or equal privileges and immunities; conclusory allegations unsupported by material facts are insufficient to state a claim. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012).

According to the Complaint, defendants "conspired to wrongfully detain and imprison Plaintiffs against their will," and "illegally, unlawfully, maliciously, and wrongfully conspired with one another and/or engaged in concerted activities with one another, with intent to, and for the illegal and unlawful purpose of, depriving Plaintiffs of their Constitutionally protected civil rights."  (Doc. 1, Complaint at ¶¶ 67, 69).  The Complaint also alleges that Hilanka, Marston,[2] and an unnamed MGM surveillance worker, "secretly and collectively put surveillance tapes and material together to 'create' the impression of wrongdoing by Plaintiffs at the behest of MGM." *Id.* at ¶ 20.    Further, the Complaint alleges that Marston and Hilanka "conspired and/or concerted action [sic] collectively to have Plaintiffs detained and their property seized against their will, their purses and persons searched and cellphones taken."  *Id.* at ¶ 21.

---

[2]The Complaint does not identify if Marston is an MGM employee, although that appears possible. In the court's order directing plaintiffs to file a sur-reply brief, the court asked plaintiffs to clarify if Marston is an MGM employee.  Plaintiffs failed to reply to the court's order; thus, the court remains unsure of Marston's identity.

Plaintiffs also allege that defendants Marston, Hilanka, and the unnamed surveillance officer "intentionally lied, misled and/or misrepresented facts during their testimony," at their criminal trial "in order to convince jurors to convict Plaintiffs on the alleged embezzlement counts." *Id.* at ¶ 39. Plaintiffs cannot recover damages for defendants' trial testimony as under the common law, lay witnesses are immune from subsequent damages liability for their trial testimony. *Briscoe v. LaHue*, 460 U.S. 325, 331-34 (1983). Thus, the court considers only plaintiffs allegations that Hilanka and the unnamed MGM surveillance officer wrongfully conspired to falsely accuse them of wrongdoing.

Plaintiffs claim that they are "considered of a racial minority classification," although they do not articulate their race or ethnicity, and claim generally that defendants' conduct was "motivated because of Plaintiff's ethnic and age background." *Id.* at ¶¶ 17, 53. Significantly, plaintiffs allege that they were replaced by workers earning less than them at a rate of $13.50 per hour, and claim that their union president told them that MGM had been looking for an excuse to fire them in order to replace them with workers at a lower rate of pay. *Id.* at ¶¶ 30-31.

In order to be liable under § 1985(3), plaintiffs must demonstrate that "the conspiracy was motivated by racial, or other class-based, invidious

discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). "To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it." *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010). Here, plaintiffs assert that they are all members of a "racial minority classification," but they have not alleged facts supporting the theory that defendants had discriminatory animus against them on that basis, nor have they pled any facts suggesting that defendants conspired to deprive them of their constitutional rights because of their minority status. Rather, they allege that MGM sought to terminate them wrongfully in order to replace them with workers at a lower rate of pay, and in fact did so. Plaintiffs do not allege that they were replaced with non-minority workers nor have they alleged any other direct or circumstantial facts which would support the inference that defendants' investigation of their alleged embezzlement was racially motivated.

Conspiracy claims must be pled with some degree of specificity. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Vague and conclusory allegations unsupported by material facts are insufficient to state a conspiracy claim. *Id.* In order to support a conspiracy claim,

- 14 -

plaintiff must allege a sufficient factual basis to establish a "meeting of the minds" on the part of the alleged conspirators. *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). Plaintiffs have failed to do so here. Plaintiffs allege that MGM's actions in proceeding with an investigation against them for embezzlement were motivated by a desire to replace them with workers earning less than them. This is insufficient to support a § 1985(3) claim which requires class-based discriminatory animus. Accordingly, plaintiffs' § 1985(3) claim against MGM could not survive a Rule 12(b)(6) motion to dismiss, and plaintiffs' request to amend the Complaint to add such a claim against MGM shall be denied.

## E.   Plaintiffs' Breach of Employment Contract Claim is Preempted by Federal Law and is Time-barred

Plaintiffs allege that defendant is liable for breach of employment contract because they were terminated without just cause. Although pled as a state law claim, defendant argues the claim is preempted by federal law. Accordingly, the court addresses that claim here.

Plaintiffs allege they had a just cause employment contract based on their labor contract with defendant. (Doc. 1, Complaint at ¶ 88). Plaintiffs also allege that they faxed their termination papers to the union, had several conversations with their union, but the union took no action. *Id.* at ¶¶ 29-31, 33. Also, plaintiffs allege that the union told them that defendant

- 15 -

refused mediation on August 9, 2013, and there was nothing the union could do until the gaming commission investigation was complete. *Id* at ¶ 33. Defendant argues that because plaintiffs are members of a union, their breach of contract claim is preempted by the Labor Management Relations Act, and their claim should be analyzed as a § 301/hybrid suit against the employer for wrongful discharge and against the union for breach of the duty of fair representation. 29 U.S.C. § 185(a); *Vaca v.* Sipes, 386 U.S. 171, 186 (1967). The law is well settled that where resolution a state law claim requires interpretation of the terms of a labor contract, or where the rights claims by plaintiff were created by the labor contract, plaintiff's claim is preempted by § 301. *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004) (citations omitted). Because plaintiffs claim their labor agreement gave rise to a just cause employment contract, plaintiffs' state law breach of contract claim is preempted by § 301.

In order for a union employee to maintain an action for breach of a labor contract against her employer, she must also establish that her union breached its duty of fair representation, in what is known as a hybrid § 301/fair representation claim. *Robinson v. V&S Detroit Galvanizing, LLC*, __ F. Supp. 3d __, No. 16-10589, 2016 WL 3902997, at *5 (E.D. Mich. July 19, 2016) (citing *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538

(6th Cir. 2003)).  In a hybrid § 301/fair representation claim, plaintiff must prove both that her discharge was contrary to the contract and that the union's representation was deficient.  *Id.* (citing *DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 165 (1983)).  The statute of limitations period for a hybrid § 301 claim is six months.  *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987) (citing *DelCostello*, 462 U.S. 151).  The claim accrues when "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation."  *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir. 1985 (citation omitted).

As such, defendant argues the claims is time-barred under the six-month limitation period that applies to hybrid § 301 claims.  Plaintiffs have not responded to this argument; thus, defendant argues plaintiffs waived it. However, the Sixth Circuit has admonished that a district court may not grant a defendant's motion for summary judgment or motion to dismiss on the sole basis that a plaintiff has failed to respond.  *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).   Even in the absence of a response, this court is required to examine the movant's motion to dismiss or for summary judgment to ensure that the movant has met its burden.  *Id.*  The court does

so here and determines that plaintiffs' breach of contract claim should be construed as a hybrid § 301 claim and thus, is time-barred.

In its original motion for summary judgment, defendant argues the triggering date for the commencement of the statute of limitations period is the date of plaintiffs' termination, which was February 22, 2013. The Complaint was filed on February 17, 2016. If the termination date applies, plaintiffs' § 301 claim is clearly time-barred. In their response brief, plaintiffs state that they "exhausted all contractual remedies" and that they were told, presumably by the union, that "until the charges were resolved there was nothing further the union could do in regards to enforcing LMRA and arbitration. The charges were not resolved until May 2015 with all defendants [here plaintiffs] either having their case directed verdict [sic] or found not guilty." (Doc. 25 at PgID 162). In their reply brief, defendant argues that even if the May, 2015 date is the triggering date, the § 301 claim is still time-barred because the lawsuit was not filed until February 16, 2016, long after their acquittal. The court agrees. In sum, plaintiffs' breach of contract claim is preempted by § 301 and that claim is time-barred. Accordingly, Count V (breach of employment contract) shall be DISMISSED.

## III. Conclusion

For the reasons set forth above, defendant MGM's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. 19) is GRANTED, and plaintiffs' request to amend the Complaint to add federal claims under 42 U.S.C. §§ 1983, 1985(3) is DENIED.  Having failed to plead any viable federal claims against defendant MGM, the court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS SO ORDERED.**

Dated:  January 3, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 3, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---